Good morning, Your Honors. Andrew Rubin for Appellant. I actually am going to be brief unless the Court has questions. I think that the written briefing in the case probably covers pretty much most, well, I think everything, but there's just a couple of things I want to highlight. One of them is, I think I would understand a little bit more if Mr. Kaufman, the underlying civil defendants, attorneys had come in and argued that the September-October hearing on contempt was a direct contempt and, therefore, there was no reason to present any evidence. But it's the Court that's appearing, and it was the Court that set up the procedures. And the Court told Mr. Kaufman's lawyers to prepare in order to show cause. That's not done in a direct contempt. There was additional, there was a response filed by our, by my client, there was a response filed by them, there was a response filed by us, and then there was the hearing. In a direct contempt, none of that happens. Once the Superior Court has set up the proceedings, it can't then in the middle just say, you know, we've changed the rules, you've been operating under the idea that this is an indirect contempt and there has to be evidence. But there doesn't. I'm going to find that in my presence you failed to pay the fine to the Court. Obviously, it wasn't in its presence that the costs weren't paid. And that's the end of the ballgame. And so I find it peculiar that the Superior Court is coming in here and basically saying this was a direct contempt when the Court itself set it up as a direct, an indirect contempt. And other than that, I think I just want to point out again that the citations to the record with regard to the Sixth Amendment issue at the April 18th and then continued on hearing to April 21st, that clearly Ms. Diaz kept insisting she needed an attorney. She did proceed at the beginning on the issue of service of process. But after that, she asked over and over again. She even said she didn't understand the proceedings. And it seems to me that the argument from the other side is basically she's a lawyer. She's not entitled to an attorney. And as a lawyer, I find that disturbing. The next time I get arrested, excuse me, the first time I get arrested, which will be the next time I get arrested, I'd like to think that I don't have to rely on myself because I've been representing Ms. Diaz all the way through this. I've been pretty unsuccessful. I think I'd rather have somebody who might actually be better at this than I am to represent me. And I would hate to be told if I went into court and said, gee, I have a problem with the way I was served, and then told, no, you can't have an attorney for the criminal part of it. I think that's not the way things work. Other than that, you know, I think the briefing on both sides covers everything pretty well. But I could be totally wrong, and there could be all kinds of questions. I'd be happy to try to make them. It appears not. No, the briefing on both sides, I think, is quite careful and extensive. Thank you. Thank you, Your Honor. It's just time for rebuttal, but I probably won't need it. Okay. Good morning. Kevin McCormick for Superior Court of California County of Los Angeles. On the issue of the September-October contempt hearings, what had happened is that Ms. Diaz appeared through her attorney, Mr. Rubin, and at that point did not engage in the trial process, refused to put on evidence, and then advised the court that none of the fees or costs for fines had been paid. That then constituted a direct contempt. It was in the view and presence of the court, and at that point the court recited the contempt, the facts supporting the contempt, and issued the sentence of three days. The Superior Court's position is that at that time it became a direct contempt, and that's how it was treated. Well, under California law, who has the burden of proving an inability to pay? Your Honor, my understanding is that it can be shifted to the defendant under California law, and the brief cites, I believe, the Moss case for that proposition. The issue there becomes if, in fact, the contempt or the defendant shifts the burden to the court and says, I can't pay, but you have to prove it, and says I have a constitutional right to financial privacy, then the court's left without a method by which it can enforce its judgments. At that point, the court can't prove the financial inability, and anyone can come in and say, I can't pay, but you have to prove it, court. The court then would have no power to enforce its judgments or orders, and they would become nullities. I guess the question is, you're looking at Moss as your authority? Yes. It is not being an element? It can be shifted. It can be shifted. But is that true in a non-family law context? My belief it is, Your Honor. And that's cited for the reasons I put forth before, that if you have the situation where a defendant says, I can't pay, but I don't have to prove it. Well, how do you then account for the California cases that basically say that ability to comply is a traditional element of the contempt itself, but then they interpret Moss as sort of an exception or a narrow situation where that wouldn't be the case? Your Honor, I think Moss is the correct holding as applied to contempts, and for the reasons stated, the financial issue, whether or not the defendant can pay, if it shifts it back to the court. And in this case, Ms. Diaz would not sit for a judgment debtor exam. She wouldn't answer questions citing the right of privacy. Let's go back to Moss again. In Moss, it's logical in the family support situation, because there you have a prior order that's already determined the question of ability to pay and calculated an amount that should be paid based on an assessment of those factors. In this kind of case, you don't have a prior court determination of an ability to pay. That's correct, Your Honor, and the court can't do that unless the contemporary or the defendant answers the questions at the debtor exam. They have no other method. The court has no other method to find out whether or not that individual can pay. Counsel, in a federal habeas case like this, can we examine the state court's interpretation of state law under Estella v. McGuire? Yes, Your Honor. I'm sorry, I'm not sure I understood the question. This is a federal habeas court case. We have a state court that's habeas. Can we re-examine the state court's determination of state law? My understanding, Your Honor, is that the state is the final expositor of its own law. That's what Estella v. McGuire says. Unless there is a violation of a federal constitutional right, then the state court's reading of its own law should take precedence. Do we have that here? I do not believe so. I believe looking at the record in total instead of which I believe is the Court of Appeal decision labeled Diaz 9, it lays out the procedural history of this case and how this all came to pass. It appears there's no further questions. The only other issue that was raised by Mr. Rubin was Sixth Amendment right to counsel. It's not an issue of whether the lawyer has a right to due process. It's whether the lawyer made an intelligent and knowing waiver. And given her status as a lawyer, we believe she did. Thank you. Thank you. May it please the Court. First, the Court of Appeal opinion came down well after this contempt. And it's not really what this Court needs to look at in terms of a reasoned opinion below. Second, with regard to Moss, Moss appears to be interpreting a statute that was passed or amended in response to the Hicks case, which we cited a lot. I don't want to try to pronounce the second party. And in Hicks, which was a similar – which was a family law case, the Court basically said you can shift the burden in a civil contempt. You can't shift the burden in a criminal contempt. And although I'm not sure it's cited at that Solster County v. Allen and Sandstrom v. Montana, that sort of idea. And that they couldn't tell whether this was civil or criminal, so they didn't know whether there was an improper burden shifting. California then went back and amended 1209.5 and took ability to pay out as an element. So all of Moss's language that's cited in Apelli's brief that analyzes whether this is proper doesn't go any further than analyzing the new 1209.5 of CCP. And what it says is, yes, we can remove it as an element. Maybe we can't shift the burden if it is an element, but we can remove it as an element, and 1209.5 removed it as an element. But what we have in this case is a standard garden variety, although more complicated maybe, contempt. And it's not under 1209.5. And being not under 1209.5, the element of ability to comply is still there. Moss, the only case I know of that interprets Moss as to whether Moss applies in anything more than the family law case is the Ivey case, Ivey E.Y., which we cited. There may be more than that since then, but I don't know. And Ivey says, yes, this is limited to family law cases, and they go into this description about the fact it makes sense. There's a prior holding. There's a prior finding. And basically, it's there's no more element. The reason that this is important in terms of Federal constitutional law is under Winship and under, you know, the footnote that's cited in Hicks, the government or the court or the other side in this case, because it was an indirect contempt, has to prove an ability to pay. That's an element. And if they haven't proved it, in fact, it doesn't even matter whether it's an indirect contempt. Even under direct contempt, they'd still have to prove it as an element of the contempt. They say they were trying to get the evidence to prove it, but your client wouldn't sit for the debtor's exam. Well, you know, that's a kind of an interesting question. She wouldn't sit for a debtor's exam for Mr. Kauffman. Did the court ever hold a debtor's exam with regard to whether she had the ability to pay the $1,000? No, the court never did that. It would be sort of an unusual proceeding, the court ordering her to sit for a debtor's exam for the court. But the court now seems to be arguing, well, she didn't prove to the court she didn't have the ability to pay because she refused to answer questions to somebody else, which is kind of trying to have it both ways as to who the contempt, you know, was sort of directed at. And, you know, I guess I just need to point out that contempt is a pretty serious business. And under Hicks, it's really a criminal case. And there are times in a criminal case where you can't get the evidence. You may believe the evidence is there, but the only way to get the evidence would be to violate, have the defendant violate the Fifth Amendment. And you can't force him to do that. And whereas I'm not arguing Fifth Amendment. But let me just ask you as a practical matter. Right. How would it work? I mean, under your theory, you're saying the court would, in effect, have to hold the hearing, the person would take the Fifth Amendment. Right. Right. And is that what would – is that essentially what would happen? Well, I don't know whether the person would take the Fifth Amendment or the person would refuse to answer. The court would say I direct –  Right. Right. Court says I direct you to answer. I direct you to answer, do you have the ability to pay $1,000? Do you have $1,000 in your bank account? I refuse to answer. That's a direct contempt, unless there's some reason it isn't. That's a direct contempt in the purview of the court, which the court could punish because the person had the ability to answer the question, not whether the person had the ability to pay. Not if they would take the Fifth Amendment. But then – but then there would have to be a hearing as to whether the Fifth Amendment claims were valid. Because remember, you can't – one can't just – A hearing. What? If the court is holding a hearing. Right. If they're inquiring about her ability to pay, what kind of a hearing do you need? Well, at that – at that point, the person – I'm not quite sure why the person would take the Fifth Amendment because at this point there's the question of the other contempt. I don't know. I mean, it's possible that the way this is set up, unless California would decide that in any case in which ability to comply involves a money payment, much like 1209.5, that that then isn't an element anymore. California could do that, I suppose. They did it in 1209.5. California could pass a law saying that in a contempt proceeding where ability to pay is an issue, it is no – it's no longer an issue. California could do that. Isn't that the interpretation the State court has given here of State law? Well, the interpretation is that Moss applies only in family law cases. It doesn't apply – But the court held. That's what I – that's what Ivey says. What did the court hold here? Well, this isn't a published opinion. Ivey and Moss are, and they're the interpretations of – of – What did the court hold here? What was its analysis? The court's analysis was that Moss applies even to cases that – even to situations that weren't before Moss. Moss was specifically deciding on that one statute. But that's California's law, interpreted by a California court in this particular case. Why are we not, as a Federal habeas court, required to follow that interpretation? Because California law has been interpreted by published cases, and this case – this court below didn't follow that. They didn't follow California law. Do they have a choice to review their analysis under Federal habeas? If it's plainly – if it's plainly wrong and in violation of Federal law, which it is, because the law in California is that ability to comply is an element, and they're reading that out. You're saying that by reading it out here, that it's a violation – it's a really pretty clear violation of due process. Of – I'm sorry, yes. Due process because they failed to prove beyond a reasonable doubt an element of a criminal offense. That's right, under Winship. Thank you. Okay. Thank both counsel for your arguments this morning. Thank you, Your Honor. The case of Diaz v. Baca is submitted.
judges: Hall, McKeown, Wardlaw